Good morning. May it please the Court. My name is Stephen Wichley, and I represent Gerald Sherman, who is the appellant in this case. This is a case, Your Honors, with two issues. One is a trial issue. The other is a sentencing issue. I'm going to spend the vast majority of my time on the trial issue, in part because that's what's more important to Mr. Sherman, is getting a new trial in this case, but also because I think it's pretty clear that Mr. Sherman prevails on the sentencing issue and I don't think that even I could mess up that issue, no matter how much time I were to spend on it. Turning to the trial issue, the issue is regarding the admission of expert testimony from an employee or an agent of the United States Treasury Department. What's important to remember is that this was a case that turned solely on the mental state and culpability or lack thereof of Mr. Sherman. It was undisputed at trial that Mr. Sherman accepted money from the various investors who were listed as victims in the indictment. It was also undisputed that those investors did not get their money back. The sole issue for the trier of fact in this case was to determine whether or not Mr. Sherman had an intent to defraud. In that factual context, a government expert, an agent from the United States Treasury Department, a highly credentialed individual, a man who had nothing whatsoever to do with the investigation of this particular case, was allowed to testify before the jury regarding what a typical financial fraud scheme looks like. It was essentially allowed to provide the jury with a checklist of the types of conduct which are indicative of an intent to defraud. Again, the only factual issue. Counsel, did your client stipulate to or in any other way concede the other elements apart from the state of mind? He did not formally go on the record and concede those elements, but it was clear Mr. Sherman testified and testified at length and admitted that he took money from the various investors and the investors testified and were not challenged on cross-examination regarding the fact that they did not receive their money back. Well, the reason why I ask that is in the absence of something formal, why isn't the government entitled to prove its entire case, including the elements that you say really weren't truly contested? Well, the only element that the government expert testified regarding or the only element to which his testimony was relevant was the mental state of Mr. Sherman. I mean, that was the ñ what he testified about was, you know, if an investment scheme looks like this, if it has characteristic A, B, C, or D, that is a hallmark of an intent to defraud. And that was the entire issue in the case. And Mr. Kerr, who is the expert's name, his ñ the checklist that he provided to the jury coincidentally dovetailed with the facts of the case. He testified that where there is a promise of ridiculously high returns, where there is a promise of little or no risk to the investment, where there is an indication from the person who takes the money that this is part of a secret overseas trading program, that this is something that is always available to the defendant to invest in, that this is something that is not available to the general public, if legitimate-sounding phrases like prime bank notes are used, he testified that these are all things that he looks for in determining whether or not a financial investment plan is, in fact, a scheme or a fraud or involves an intent to defraud. Essentially, you know, his testimony led to an inescapable syllogism for the jury. People who engage in these types of conduct are running a fraud scheme. Mr. Sherman engaged in acts consistent with this checklist that I provided to the jury. Therefore, Mr. Sherman was running a fraud scheme. Now, it's true that Mr. Kerr didn't come out and say the ultimate conclusion, but how close does he have to bring the jury to that conclusion before it violates either the rule against criminal profile evidence or federal rules of evidence 704? Does it matter that you had what I thought was a pretty effective cross-examination that dealt with the possibility that there were real things out there that had some of these characteristics and also conceding that, of course, he can't look into anybody's heart? I'm not sure the exact phrase he used, but... I don't think the cross-examination cures the error. I mean, trial counsel, of course, objected prior to trial and tried to keep his testimony out in its entirety. When the testimony was allowed in, he made the best of a bad situation by getting Mr. Kerr to say, well, I can't say that this specific defendant had this specific intent, but I can say all these other things that lead inescapably to that conclusion. I think the damage is done at that point, and I think I don't believe that Mr. Sherman should be penalized on appeal because his attorney did the best he could to mitigate the damage of an erroneous ruling. Otherwise, you create an incentive for trial counsel to simply sit there and say, well, I lost this motion, I'm not going to do anything in front of the jury to try to mitigate the harm which occurred. Counsel, how does this evidence differ from evidence in drug cases that discusses typical patterns of individuals who are dealing drugs? I don't think that it does differ in any material way, and that type of evidence has been disfavored as criminal profile evidence in some cases. But it's been admitted in some cases. So how do you distinguish those cases? Well, I think a lot of it, too, comes down to what's the defense in the case and how harmful is the admission of the testimony. And in this case, when your only defense is to stand up before the jury and say, yes, I did these things, but here's what I meant to do, and I did not mean to steal this money from these people, or I did not intend to deprive them, I did intend to return the money. When you have a credentialed government expert up there saying, there is no such thing as this type of investment instrument, I investigate frauds. That's all I investigate. And, you know, in the reply brief, you know, I pointed out that just the flavor of his testimony, the number of times that either Mr. Kerr or the prosecutor in examining him used the words fraud, scam, you know, it was over 40 times in relatively short testimony. And having this gentleman say that he's from the United States Treasury Department places a further imprimatur or imprimatur, I can never remember how to say that. Either is correct. On the legitimacy of what he has to say. And I think that invades the province of the jury. And the real question I think that this panel faces is if we're going to have a rule that says that criminal profile evidence is disfavored in our circuit, and if we're going to have a rule, rule 704, that says that opinions on mens rea are not allowed before the jury, we need to enforce that rule. And if we're not going to enforce it, if we're going to say, well, it's okay for a witness to say if an individual does this or if a person does this, it's indicative of an intent, as long as that witness doesn't use the defendant's name, if we're really going to gut the rule to that extent, then why do we have the rule at all? And I think that's the issue that this case presents. I want to turn very quickly, unless the Court has additional questions on that particular issue, I want to turn very quickly to the sentencing error in this case. To be perfectly clear. There were no reasons given. Pardon me? There were no reasons given for the enhancement, right? Correct. And frankly, I was. And Cardi says you have to. Isn't that the sort of long and short of your argument? It's not just Cardi. I mean, there are specific cases regarding the obstruction enhancement that say you have to make factual findings on the record for each and every element of impose this particular enhancement. That wasn't done. Frankly, I'm surprised the government didn't concede this issue. I think we have to have a resentencing in this case, but I did want to touch on it briefly in case the Court had any questions regarding that. You may want to save your last minute. I will save my last 70 seconds. Yes, thank you very much. We'll hear now from the government. Thank you. Good morning. May it please the Court. Tate London on behalf of the United States. Did you try this case? I did. This is a case in which the government had to prove that Mr. Sherman, one, made up a scheme or plan to defraud investors, and secondly, they acted with the intent to defraud. And Mr. Kerr's testimony went solely to the existence of a scheme or plan to defraud. His testimony was offered to educate the jury, a jury that was made up of, you know, people within this area who might not have experiences in life dealing with high-yield investments. Mr. Kerr testified regarding hallmarks or indicators of a scheme to defraud. He did not express an opinion or infer in any way that Mr. Sherman intended to defraud investors. The district court did not abuse its discretion in permitting limited testimony from Mr. Kerr regarding high-yield investment fraud schemes. In fact, Mr. Kerr has testified 20 to 25 times similarly regarding high-yield investment fraud schemes. Counsel, what's your response to opposing counsel's contention that there was an impermissible syllogism used by the expert? He said the testimony was that here are the hallmarks of an illegal scheme, meaning the defendant engaged in this hallmark, therefore he engaged in an illegal scheme. What's your response to that? My response is that if, I mean, if you have a line and you draw a line in the sand and this is, you know, you're crossing over to a where you're necessarily implying the requisite intent, I don't think the government came anywhere close to that line. And if you look at some of the other cases, like Liner, which we provided to the court yesterday. Well, that's an Eighth Circuit case. That's an Eighth Circuit case, but I think it's instructive because in that case someone from the Federal Reserve Board, someone from the government testified regarding 12 indices or hallmarks of a high-yield investment fraud scheme, and even went further and testified that in this case, in the Liner case, the program that the defendant was pitching exhibited some of these hallmarks or indices. Here, Mr. Kerr, he didn't go there. He simply testified very, in a very limited fashion regarding four or five hallmarks of high-yield investment fraud. So I think it, Mr. Kerr went nowhere near that line. What's the strongest case in the Ninth Circuit that supports your argument? The strongest case, well, I think, Your Honor, the criminal profiling cases are in opposite. They're not, this is not profile evidence. If you look at the cases that the appellant relies upon, they're drug or sexual assault cases where its physical characteristics, you know, shift the eyes of the drug courier or that the sexual assaulter had certain characteristics from a broken home, that type of thing. So, you know, the appellant relies on criminal profile cases, and this is not within that ballpark. But my question. I'm sorry. My question was what's the strongest case in the Ninth Circuit that supports your argument? There is a Ninth Circuit case, and I apologize that I don't have it on the tip of my tongue, but there's a check-kiting case that is cited, I believe, in the Winkle case where the court found it was not an abuse of discretion to allow testimony regarding a check-kiting scheme so that the jury could understand something that was not, was foreign to them. The average juror does not understand what a check-kiting scheme entails. So if I understand your argument correctly, you're asking us to distinguish between a witness who discusses characteristics of a defendant versus a witness who discusses characteristics of a type of crime. In other words, he's describing the criminal act rather than the act or. Is that your position? I think it's one of the distinctions. I don't think it's the only one, but I think it is one of the important distinctions. What are the others? Well, I think you have cases in which, like Liner and Winkle, where the courts made clear that this was not opinion testimony. And I think that's an important distinction. This testimony was, the defense in this case was that Mr. Sherman had a good faith belief in the investment programs that he was pitching to the investors. And I thought the cross-examination was particularly effective. Well, what's your response to counsel's argument when I asked him about that, which is basically a good cross-examination doesn't cure the problem if the person never should have testified. As a general proposition, is that not true? Well, I guess I don't buy into the underlying premise that Mr. Kerr should have never testified. I think given the absence of stipulations in the case, which Your Honor asked about, there were no stipulations with respect to Mr. Kerr's testimony. In fact, it was a case and it's not part of the record, but there were little, if any, stipulations. It's not part of the record. We aren't supposed to think about it, so. The government was entitled to put on its case, and that case entailed establishing that there was a scheme or plan to defraud. And Mr. Kerr's testimony went to that element. So I think it was directly relevant. The district court limited the testimony in partially granting the motion and limiting. Let me turn to the sentencing question and ask you why defense counsel isn't correct. In United States v. Cardi, which was our in-bank case just a few weeks ago, we held that it would be procedural error under the most recent Supreme Court cases for the district court to fail adequately to explain the sentence that is selected. Procedural error within the meaning of gall that requires resentencing. Why isn't that what happened here? There's really no explanation at all that I could see of why the obstruction enhancement was imposed. And Your Honor is correct. There is no oral finding to support imposing the obstruction enhancement. The arguments that the government made in its brief relate to that the court adopted the PSR, which had findings with respect to perjury by Mr. Sherman. The statement of reasons also adopted the PSR. That's part of the judgment. But, you know, when the rubber hits the road, there are not those findings with respect to perjury. And the ---- Do you now agree that it has to be sent back for resentencing even if we affirm the conviction? I would offer this, Your Honor. If there ever was a case where the record established the perjury of the defendant, this absent explicit findings, this is that case. Mr. Sherman testified for two days. There were victim after victim who testified. Mr. Sherman testified that that simply didn't happen. All that says is that the judge could have made the findings. In other words, they wouldn't be futile to send it back. If there were no evidence, then there would be no point in sending it back. But how do you get around our statement in Carty that it's procedural error to fail to make the findings? I don't know that the government can, Your Honor. We simply offered the arguments, and it's for the court to decide whether that's sufficient. But there were no explicit findings with respect to the obstruction enhancement. Counsel, I ask you to cite me a case in the Ninth Circuit that best supports your argument. You cited to Winkle. That's a Sixth Circuit case. Do you have anything in the Ninth Circuit? Winkle cites to a Ninth Circuit check hiding case, which I could provide to the court. Okay. That's all right. Again. Excuse me. If that cite is simply missing from your brain at the moment, that's fine. But if it's actually not in the briefing, would you speak to the deputy clerk and fill out a slip with a citation for us? It's not in the brief, certainly. The only thing you cited in the brief was the Winkle case, which is a Sixth Circuit case. Right. And I will speak with the clerk following the argument. Thank you. I want to go back to the trial issue and the entire defense of the case, and that was that Mr. Sherman had a good faith belief in these investment opportunities. And in the cross-examination, Mr. Kerr was asked and he acknowledged that he did not have the power to look into the hearts or minds to see if there are people who believe in good faith in these investment opportunities. So the defense position from the defense position was it didn't matter what Mr. Kerr had to say, because if Mr. Sherman believed in these investment programs, then his testimony was irrelevant, because all you have to look at is into his mind and whether he had the requisite intent. And I would submit that if Mr. Sherman actually invested the money, rather than spending it on a youth hockey program and on his personal expenses, then that's a much different case than the one that was tried. He did not invest the money. He used it for the hockey program and for his own personal expenses. And for those reasons, we ask that you affirm the conviction and the judgment. Thank you. Thank you. Mr. Richley, you have some time left. It's true that Mr. Kerr said that he could not look into the hearts and minds or whatever the phraseology was of another individual to determine their intent. He also said that what these schemes entail is that someone says, give me money up front, I'm going to do something for you. I never really had any intent to do that in the first place. And when he says that, he's describing a hypothetical scenario that's virtually identical to the facts of this case. Now, counsel talked about a line in the sand, and I think I know what he means. I think of it myself as a continuum. I think there's a continuum of testimony which in many places along that continuum is permissible, and at some point it becomes impermissible. And I think this case is about when on that continuum is it impermissible. Now, Morales says it's impermissible when the testimony necessarily implies a mental state on the part of the defendant. That doesn't mean that the witness has to say, Mr. Defendant had this mental state. It means that his testimony has to necessarily imply that mental state. And Your Honor asked about the case that's most favorable to the government's position. I'll tell you what I think the Ninth Circuit's most favorable government case is on this issue. It's the Younger case, which I cited in my opening brief. Younger is a 2005 panel decision that holds that if you say a person who does this or an individual who does this and you don't name the defendant, that that's okay. Counsel, you have used up your time and then some. Okay. So if you could wrap up quickly, we'd appreciate it. Sure. Our position is that Younger runs counter to the en banc decision of this Court from 1997 in Morales, which sets forth the necessarily implies standard. And thanks for letting me go over. Thank you very much. We appreciate the arguments of both counsel. The case just argued is submitted. And just for the information of those who are waiting in the courtroom, after the next case, Shaw v. Quinn, we'll take a short break, about five minutes worth. So we'll next hear argument in Shaw v. Quinn.
judges: Graber, Rawlinson, Wright